**RECORD NO. 13-2328**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

### K. A. HOLDINGS LTD. OF NEW YORK, a/k/a K. A. Holdings of New York, Inc., a/k/a K. A. Holdings of New York, Ltd., a/k/a K.A. Holdings, Ltd.,

*Plaintiff-Appellee,*

v.

### CHRISTOPHER CHAGARIS,

*Defendant-Appellant.*

---

## OPENING BRIEF OF DEFENDANT-APPELLANT

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

Rodney A. Dean
Clay A. Campbell, Sr.
**DEAN GIBSON HOFER**
**& NANCE, PLLC**
Cameron Brown Building
Suite 900
301 South McDowell Street
Charlotte, North Carolina 28204-2686
(704) 372-2700 (Telephone)
rdean@dghnlaw.com
ccampbell@dghnlaw.com

Counsel for Defendant-Appellant

---

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____       Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                                YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                     YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                         (date)

# TABLE OF CONTENTS

**TABLE OF CONTENTS**................................................................ i

**TABLE OF AUTHORITIES**..................................................... iv

**STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION**......................................... 1

**STATEMENT OF THE ISSUES**............................................. 2

**STATEMENT OF THE CASE**…………………….................... 3

**SUMMARY OF ARGUMENT**…………………………………. 12

**STANDARD OF REVIEW**………………………………........... 12

**ARGUMENT**………………………………………………….... 13

I.        **THE DISTRICT COURT ERRED IN DENYING
          DEFENDANT'S MOTIONS FOR SUMMARY
          JUDGMENT, DIRECTED VERDICT, AND
          JUDGMENT NOTWITHSTANDING THE
          VERDICT WHEN THE CONDUCT WAS
          SPECIFICALLY ALLEGED TO HAVE
          OCCURRED MORE THAN FOUR  YEARS
          BEFORE THE FILING OF THE COMPLAINT**............................ 13

          **A.    Claims for Legal Malpractice in North Carolina are
          governed by a three year Statute of Limitations and a four year
          Statute of Repose, running from a defendant's last act giving rise
          to the cause of action**.............................................................. 14

          **B.    The period for K.A. Holdings to file its complaint
          began to run when Mr. Chagaris allegedly failed to timely perfect
          the appeal and expired before the first complaint was filed**.............................. 16

          **C.    Equitable Estoppel does not defeat the Statute of Repose**............. 20

**II.    THE DISTRICT COURT ERRED IN ADMITTING EVIDENCE OFFERED BY K.A. HOLDINGS TO SUPPORT ITS CLAIM OF DAMAGES THAT WAS NOT PREVIOUSLY DISCLOSED PURSUANT TO RULE 26** ................................................................ 20

    **A.    Rule 26 requires that parties disclose documents supporting the claim for damages and provide a computation to the opposing party** ................................................................................ 20

    **B.    K.A. Holdings failed to disclose any damages computations or supporting documents to Mr. Chagaris prior to trial** ................................ 23

**III.    THE DISTRICT COURT ERRED IN ALLOWING THE JURY TO CONSIDER K.A. HOLDINGS' CLAIM OF LEGAL MALPRACTICE WHEN IT HAD FAILED TO SATISFY THE ELEMENTS FOR SUCH A CLAIM** ............................ 25

    **A.    North Carolina provides a specific framework for recovering on a claim for legal malpractice** ................................ 25

    **B.    K.A. Holdings' claim for legal malpractice should not have even survived summary judgment** ................................ 26

    **C.    K.A. Holdings' evidence at trial failed to satisfy the elements for recovering on a claim for legal malpractice** ................................ 27

        **1.    K.A. Holdings failed to establish that its underlying claim for conversion against Overland Properties was valid or that it could obtain a judgment in its favor** ........................ 27

            **a.    Required elements for a claim of conversion in North Carolina** ................................ 27

            **b.    K.A. Holdings's failure to establish the fair market value of the specific goods allegedly converted prevents it from proving the underlying claim** ................................ 28

    2.    **Defenses in the underlying case would have precluded a successful outcome in that action**............................................... 30

    3.    **There was no evidence that a judgment would have been collectible**......................................................................... 32

    4.    **K.A. Holdings' expert offered no opinion that the appeal would have been successful or collectible**............................. 33

**IV.    THE DISTRICT COURT ERRED IN ADMITTING DOCUMENTS INTO EVIDENCE UNDER THE BUSINESS RECORDS EXCEPTION THAT DID NOT SATISFY THE SAFEGUARDS FOR SUCH DOCUMENTS**............... 34

    **A.  Records must be kept in the course of regularly conducted Business activity to qualify for the Business Records Exception**....................... 34

    **B.  The District Court erred in admitting the documents under the Business Records Exception as K.A. Holdings failed to satisfy any of the criteria for the exception**............................................................ 35

    1.    **The records were not made by a regular business activity**............... 36

    2.    **The records were not kept in the regular course of business of K.A. Holdings or any other business**............................... 37

    3.    **The documents were not made as a regular practice**....................... 37

    4.    **These documents were not generated by a person with knowledge of their contents or from a person with knowledge of the contents**.................................................... 38

**CONCLUSION**................................................................. 39

**CERTIFICATE OF COMPLIANCE**.................................. 40

**CERTIFICATE OF SERVICE**......................................... 41

# TABLE OF AUTHORITIES

<u>Federal Authorities</u>

*Barber v. JTEKT Auto. Virginia, Inc.*
    513 F. App'x 346 (4th Cir. 2013).................................................. 35

*Bullard v. Roadway Express*
    3 F. App'x 418 (6th Cir. 2001).............................................. 21, 22

*Burlington Ins. Co. v. Shipp.*
    215 F.3d 1317 (4th Cir. 2000)...................................................... 22

*Clark v. City of L.A.*
    650 F.2d 1033 (9th Cir. 1981)...................................................... 35

*Creekmore v. Maryview Hosp.*
    662 F.3d 686 (4th Cir. 2011)........................................................ 35

*Design Strategy. Inc. v. Davis*
    469 F.3d 284 (2d Cir. 2006)................................................... 21, 22

*E. Auto Distribs., Inc. v. Peugeot Motors*
    795 F.2d 329 (4th Cir. 1986)........................................................ 13

*Frontline Med. Assocs. Inc. v. Coventry Health Care*
    263 F.R.D. 567 (CD. Cal. 2009).................................................. 21

*Gould Paper Corp. v. Madisen Corp.*
    614 F. Supp. 2d 485 (S.D.N.Y. 2009)........................................... 22

*Hertz v. Luzenac Am., Inc.*
    2006 WL 994431 (D. Colo. 2006)................................................ 21

*Keller v. Prince George's County*
    827 F.2d 952 (4th Cir. 1987)........................................................ 12

*In Re McGillewie*,
    936 F.Supp. 327 (W.D.N.C., 1995),
    *affirmed* 94 F.3d 641 (4th Cir. 1996)............................................ 32

iv

*MicroStrategy Inc. v. Bus. Objects, S.A.*
    429 F.3d 1344 (Fed. Cir. 2005)............................................................ 22, 23

*Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*
    175 F.3d l221 (10th Cir. 1999)..................................................................... 21

*Rambus, Inc. v. Infineon Tech. AG*
    145 F. Supp. 2d 721 (E.D. Va. 2001)............................................................ 22

*Rambus, Inc. v. Infineon Technologies, AG*
    318 F.3d 1081 (Fed. Cir. 2003)
    *rehearing and rehearing en banc denied, certiorari denied,*
    124 S.Ct. 227, 540 U.S. 874........................................................................ 13

*Randall v. Prince George's County*
    302 F.3d 188 (4th Cir. 2002)........................................................................ 13

*Silicon Knights, Inc. v. Epic Games, Inc.*
    2012 WL 1596722....................................................................................... 21, 22

*Shock v. Aerospace Integration Corp.*
    2009 WL 595923 (N.D. Fla. 2009)............................................................... 21

*United States v. Cone*
    714 F.3d 197 (4th Cir. 2013)........................................................................ 35

State Authorities

*Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co., Inc.*
    192 N.C. App. 74, 665 S.E.2d 478 (2008).................................................... 27

*Black v. Littlejohn*
    312 N.C. 626, 325 S.E.2d 469 (1985)..................................................... 14, 15

*Carle v. Wyrick, Robbins, Yates, & Ponton, LLP*
    738 S.E.2d 766 (2013)................................................................................. 16

*Chrisalis Properties, Inc. v. Separate Quarters, Inc.*
    101 N.C. App. 81, 398 S.E.2d 628 (1990)................................................... 30

*Fender v. Deaton*
    153 N.C.App. 187, 571 S.E.2d 1 (2002)..................................................... 14

*First Union National Bank v. Richards*
    90 N.C.App. 650, 369 S.E.2d 620 (1988)................................................... 30

*Flippin v. Jarrell*
    301 N.C. 108, 270 S.E.2d 482 (1980)
    *reh'g denied*, 301 N.C. 727, 274 S.E.2d 228 (1981)................................... 16

*Goodman v. Holmves & McLaurin*
    192 N.C. App. 467, 665 S.E.2d 526 (2008).................................................. 20

*Hargett v. Holland*
    337 N.C. 651, 447 S.E.2d 784 (1994)........................................................... 15

*Hummer v. Pulley, Watson, King & Lischer, P.A.*
    157 N.C. App. 60, 577 S.E.2d 918 (2003)................................................... 25

*Kearns v. Horsley*
    144 N.C. App. 200, 552 S.E.2d 1 (2001)..................................................... 25

*Kabatnik v. Westminster Co.*
    63 N.C.App. 708, 306 S.E.2d 513 (1983)................................................... 30

*Lake Mary Ltd. P'ship. v. Johnston*
    145 N.C.App. 525, 551 S.E.2d 546 (2001)
    *rev. denied*, 354 N.C. 363, 557 S.E.2d 539 (2001)..................................... 27

*Lieb v. Mayer*
    244 N.C. 613, 94 S.E.2d 658 (1956)........................................................... 28

*Mace v. Pyatt*
    203 N.C. App. 245, 691 S.E.2d 81 (2010)............................................. 27, 28

*Midgett v. Highway Commission*
    265 N.C. 373, 144 S.E.2d 121 (1965)........................................................... 28

*Myers v. Catoe Constr. Co.*
    80 N.C.App. 692, 343 S.E.2d 281 (1986).................................... 27

*Olivetti Corp. v. Ames Business Systems, Inc.*
    319 N.C. 534, 356 S.E.2d 578 (1987)........................................ 28

*Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis*
    86 N.C. App. 5, 356 S.E.2d 372 (1987)...................................... 26

*Raferty v. William C. Vick Construction Co.*
    291 N.C. 180, 230 S.E.2d 405 (1976)......................................... 15

*Ramboot, Inc. v. Lucas*
    181 N.C. App. 729, 640 S.E.2d 845 (2007) ................................ 16

*Rorrer v. Cooke*
    313 N.C. 338, 329 S.E.2d 355 (1985)................................... 25, 26

*Rosenberg v. Town of North Bergen*
    61 N.J. 190, 293 A.2d 662 (1972)............................................ 15

*Shelton v. Fairley*
    72 N.C.App. 1, 323 S.E.2d 410 (1984)
    *disc. rev. denied*, 313 N.C. 509, 329 S.E.2d 394 (1985)........................... 30

*Smythe v. Waffle House*
    170 N.C. App. 361, 612 S.E.2d 345 (2005)................................. 31

*Trustees of Rowan Tech. v. Hammond Assoc.*
    313 N.C. 230, 328 S.E.2d 274 (1985)......................................... 16

*Zanone v. RJR Nabisco, Inc.*
    120 N.C. App. 768, 463 S.E.2d 584 (1995)................................. 31

Federal Rules and Statutes

Federal Rule of Civil Procedure 26(a)(1)(A)(iii)............................. 20, 21

Federal Rule of Civil Procedure 26(e)..................................................... 21

Federal Rule of Civil Procedure 37(c)(1)..................................................... 22

Federal Rule of Civil Procedure 61.......................................................... 35

Federal Rule of Evidence 803(6)(B)................................................ 34, 35

## State Statutes

N.C. Gen.Stat. § 1-15(c)(2007)................................................................ 14

## Treatises and Law Reviews

*Developments in the Law—Statutes of Limitations*
    63 Harv.L.Rev. 1177, 1200 (1950)................................................ 15

S. Speiser, C. Krause and A. Gans, I *The American Law of Torts* § 5:27 (1983)... 15

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 13-2328

(3:09-cv-00487-MOC-DCK)


K.A. HOLDINGS LTD. OF NEW YORK, a/k/a K.A. Holdings of New York, Inc., a/k/a K.A. Holdings of New York, Ltd., a/k/a K.A. Holdings, Ltd.

      Plaintiff-Appellee

v.

CHRISTOPHER CHAGARIS

      Defendant-Appellant


**STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION**

The District Court for the Western District of North Carolina had jurisdiction to hear this matter, as it was between a North Carolina individual and a New York company, and the amount in question exceeded $75,000.    Chris Chagaris appeals entry of a judgment entered against him by the District Court as a matter of right, pursuant to 28 U.S.C. §1291.

1

## <u>STATEMENT OF THE ISSUES</u>

1.  Whether the District Court erred in denying Defendant's Motions for
    Summary Judgment, Directed Verdict, and Judgment Notwithstanding
    the Verdict when the conduct alleged to have occurred more than four
    years before the filing of the complaint.

2.  Whether the District Court erred in admitting evidence offered by K.A.
    Holdings to support its claim of damages that was not previously disclosed
    pursuant to Rule 26.

3.  Whether the District Court erred in allowing the jury to consider K.A.
    Holdings' claim of legal malpractice when it had failed to satisfy the
    elements for such a claim.

4.  Whether the District Court erred in admitting documents into evidence under
    the Business Records Exception that did not satisfy the safeguards for such
    documents.

## STATEMENT OF THE CASE

This appeal arises from a verdict at trial, after an improper denial of summary judgment, directed verdict, and judgment notwithstanding the verdict, regarding a legal malpractice claim arising from an appeal of an order vacating an arbitration award arising from a real estate transaction.

**Underlying action:**

K.A. Holdings was formed for the sole purpose of purchasing the warehouse building and property at 111 Hawthorne Lane in Charlotte, North Carolina from Hanfords Creations, LLC. (J.A. 372: 4-9). K. A. Holdings purchased the warehouse and its contents on October 31, 2001. (J.A. 380:9-12). It sold the warehouse building the same day to Hawthorne Mills and planned to remain a tenant, continuing to store the contents already there, for at least four months. (J.A. 377:4-9, 380:9-12). Hawthorne Mills evicted K.A. Holdings from a portion of the warehouse through a summary ejectment proceeding, making certain areas inaccessible while other areas remained accessible. (J.A. 386:14-22, 1147). In an attempt to resolve the summary ejectment, K.A. Holdings agreed to not appeal the summary ejectment if it was allowed to stay in the warehouse until April 12, 2002. (J.A. 1242a).

Hawthorne Mills and K. A. Holdings subsequently entered litigation over the summary ejectment. (J.A. 386:23 – 387:5). Despite K.A. Holdings objecting to

the jurisdiction of the arbitrator to consider the matter, they arbitrated this disagreement and K.A. Holdings obtained a decision that the escrow money, in the amount of Fifty Thousand Dollars ($50,000.00), was to be returned to the escrow agent. (J.A. 407:23- 409: 4, 1173). There were no damages awarded at arbitration. *Id*. K.A. Holdings then hired Christopher Chagaris to confirm the arbitration award in North Carolina in 2002. (J.A. 410:17-21).

Mr. Chagaris filed an action to confirm the arbitration award on August 30, 2002. J.A. 423:3-14, 1180). The Superior Court of Mecklenburg County refused to confirm the arbitration award on the grounds that the arbitrator did not have jurisdiction over the matter. (J.A. 424:1-18, 1183). The Order, dated December 10, 2002, also vacated the arbitration award. *Id*. Mr. Chagaris filed a Notice of Appeal of the denial on behalf of K. A. Holdings on December 19, 2002. (J.A. 426:7-16, 1186).

Subsequently, as a continuation of pursuing the same claim, Mr. Chagaris prepared a complaint for conversion of the contents of the warehouse. (J.A. 413:1-25, 1175). He filed the Complaint on July 24, 2003 (the "2003 Action). (J.A. 427:4-13, 1187).

In a letter dated October 13, 2003 to Mr. Chagaris, more than four years before the filing of this lawsuit, Charles Diven, K.A. Holdings' New York attorney, specifically expressed his concern that the appeal of the order vacating

4

the arbitration award had not been timely perfected and asked for confirmation of the perfection of the appeal. (J.A. 434:25-435:11, 1194). Mr. Diven testified he never received a response to this question. (J.A. 425:12-16). Mr. Diven was suspended from practicing law for giving funds held in trust for other clients to Mr. Adler, one of the owners of K.A. Holdings. (J.A. 576:4-18).

K.A. Holdings presented no additional evidence regarding the appeal of the order vacating the arbitration award. As discussed below, K.A. Holdings specifically alleged that Mr. Chagaris' failure to perfect the appeal was legal malpractice. (J.A. 68-69 at ¶ 45). There were further proceedings that resulted from the issues that arose from the arbitration award litigation.

**Instant action:**

The first lawsuit alleging claims of legal malpractice against Mr. Chagaris was filed by "Hanfords Creations, LLC" as plaintiff in the Southern District of New York on October 31, 2007 by way of a verified complaint, despite there being no relation between Hanfords Creations and K.A. Holdings except that K.A. Holdings purchased the warehouse and its contents from Hanfords Creations. (J.A. 19). It alleged that Mr. Chagaris acted to defraud and mislead K.A. Holdings "over a period of more than four years…" (J.A. 25 at ¶ 69). Peculiarly, it also alleged that the plaintiff company suffered "mental anguish." (J.A. 30 at ¶ 97). It also alleged, without ever offering any supporting evidence, that Mr. Chagaris

fraudulently signed settlement checks to give the money to his fiancé. (*Id*. at 80). Mr. Chagaris moved to dismiss based on improper venue, lack of personal jurisdiction, and lack of subject matter jurisdiction. (J.A. 61).

On or about June 17, 2008, a verified Amended Complaint was filed by a different plaintiff company, K. A. Holdings of New York, Ltd., a/k/a K. A. Holdings Limited of New York, a/k/a K. A. Holdings Limited, also in the Southern District of New York. (J.A. 63). This entity did not even actually exist and was a different name from the company that filed the first Complaint. The Amended Complaint contained essentially the same allegations as the initial Complaint. *Id*. Though the Amended Complaint was also verified under oath by Bruce Adler, he testified that he never read the Amended Complaint. (J.A. 677:24-678:12). He also later admitted that the newly named plaintiff was still not the correct party. (J.A. 680:15-21, 683:19-22). The Amended Complaint claimed that Mr. Chagaris' alleged malpractice occurred for a period of "more than four years." (J.A. 45 at ¶79, 47 at ¶92, 50 at ¶108, 53 at ¶124, and 57 at ¶154). Mr. Chagaris again moved to dismiss based on the lack of personal jurisdiction, improper venue, lack of subject matter jurisdiction, and failing to state a claim on which relief could be granted. (J.A. 63). K. A. Holdings, Ltd., a third and different entity, then filed a Second Amended Complaint on October 7, 2008, again in the Southern District of New York, making the same allegations that Mr. Chagaris' alleged negligence

6

extended over a period of "more than four years." (J.A. 80 at ¶166, 81 at ¶176, 83 at ¶189, 86 at ¶205, and 89 at ¶221). It also maintained the claim for "anguish" on behalf of the company. (J.A. 94 at ¶253). Again, Mr. Chagaris moved to dismiss for lack of personal jurisdiction, improper venue, lack of subject matter jurisdiction, and failing to state a claim on which relief could be granted. (J.A. 100). The District Court for the Southern District of New York denied the Motion to Dismiss and transferred the action to the Western District of North Carolina on November 13, 2009. (Docket No. 47). Approximately five months after the matter was transferred to North Carolina, Mr. Chagaris moved to dismiss the Complaint based on K.A. Holdings' failure to prosecute the case or even retain North Carolina counsel. (J.A. 102). K.A. Holdings finally retained local counsel on or about April 19, 2010. (Docket No. 54).

Throughout all of the complaints, each plaintiff made allegations that specifically contend the alleged malpractice occurred in 2002. Each complaint requested interest from December 2002 in the Prayers for Relief. (J.A. 33, 58, and 94-95). Additionally, in the verified Second Amended Complaint, the pleading currently before the court, K.A. Holdings specifically alleged that Mr. Chagaris failed to make correct arguments at the November 2002 hearing to confirm the arbitration award, made fraudulent statements on December 12, 2002, and committed fraud in December 2002. (J.A. 68 at ¶ 45, 69 at ¶55, and 80 at ¶164).

7

**Evidence of Damages:**

In making its Rule 26 disclosure, K.A. Holdings failed to provide any calculation of the damages or identify any specific documents supporting the damages that it intended to offer at trial. (J.A. 279:6– 280:5). K.A. Holdings' evidence of damages at trial consisted solely of two sets of documents that purportedly reflected goods that the documents showed were purchases as early as 1999. (J.A. 1148, 1149). Some of the documents bore the designation "dummy" at the top. *Id*. They were <u>generated</u> for the arbitration proceedings to show what goods K.A. Holdings claimed were inaccessible in the warehouse. (J.A. 405:16-406:8). The documents were generated by Janet Rios, who did not testify at trial. (J.A. 405:25-406:1). K.A. Holdings' evidence at trial was that she generated the documents by "gerrymander[ing]" information on an inherited computer. (J.A. 769:16-19). K.A. Holdings presented no evidence at trial of anyone actually conducting a physical inventory of the goods in the warehouse at any time. While it is undisputed that some merchandise may have existed in some portions of the warehouse at some earlier time, K.A. Holdings presented no evidence as to what goods were where in the warehouse, how the goods were distributed between the accessible and inaccessible areas, or what the fair market values of those goods were at the time of the claim. There was also no evidence as to what dollar value or quantity of any of the specific goods was in the inaccessible portion of the

warehouse space. It was undisputed that a significant portion of the warehouse, at least 20%, was accessible and any merchandise contained in that area was not subject to the claim. (J.A. 386:12-23). K.A. Holdings did not offer any evidence as to the distribution of contents or the value of the contents between the accessible and inaccessible areas of the warehouse on these documents.

There was no evidence that the gerrymandered documents, which were dated years earlier, reflected the "fair market value" of the goods at any point. Similarly, K.A. Holdings did not offer any testimony from any witnesses as to the fair market value of the goods, or even what it may have received had the goods been sold at the time of being locked out of the warehouse. Likewise, the documents did not show the amount actually paid, whether the goods were actually received or even in the warehouse, any changes to the inventory in the intervening years, any loss or damage to the goods during storage, or even what specific goods, if any, remained in the inaccessible areas of the warehouse or the fair market value of those goods at that time.

### A judgment from Overland Properties was not collectible.

K.A. Holdings presented at trial as a possible source of recovery for the judgment the warehouse that K.A. Holdings had just sold to Overland Properties. (J.A. 560:22–561:4). K.A. Holdings argued that the property was owned free and clear with a sale price of $1.6 million. (J.A. 561:8-11). However, the

9

uncontroverted evidence was that the warehouse property was not owned free and clear. The warehouse property was transferred to another entity, Hawthorne Mills Partners, the very same day. (J.A. 1011:9-1012:13, 1242). At the same time as the second transfer, Hawthorne Mills Partners executed a Deed of Trust in favor of Landover Company, LLC, in the amount of $2.5 million. *Id.*

### K.A. Holdings' Expert:

K.A. Holdings designated Stephen Corby to serve as its expert regarding legal malpractice. Mr. Corby had only been licensed to practice for approximately nine months at the time he testified at trial, and even less than that when he initially issued his opinions on Mr. Chagaris' conduct. (J.A. 863:6-9). Mr. Corby's practice focuses on contract litigation and family law. (J.A. 863:3-5). Mr. Corby even initially voiced concern to counsel for K.A. Holdings regarding his qualifications to serve as an expert. (J.A. 863:17-864:1). He spent only six hours reviewing materials, but did not review any pleadings in the underlying case. (J.A. 864:17-19, 873:18-25). Likewise, he did not review any depositions. (J.A. 874:1-3). He had not even represented a client in trial prior to being retained. (J.A. 874:13-21). Unsurprisingly, he had never appeared as an expert or ever been involved in any professional malpractice cases before. (J.A. 874:24-875:3).

It is not surprising, based on this absence of experience and familiarity with the underlying proceedings, that Mr. Corby did not even draft his own opinions.

(J.A. 877:25–878:7). His opinions were authored by counsel for K.A. Holdings and he simply signed them after a brief review. *Id*. Mr. Corby provided no testimony at the hearing on summary judgment. During his deposition, which was before the Court based on Mr. Chagaris' Motion to Strike, he admitted that he did not know what the outcome would have been if the arbitration award had been confirmed. (J.A. 1237:16-24). He also admitted that he did not have any evidence that the state court proceedings would have been successful but for Mr. Chagaris' conduct. (J.A. 1240:13-24). Similarly, he admitted "I have no way of knowing whether [K.A. Holdings] could have collected on the judgment or not." (J.A. 1240:25-1241:5). Further, Mr. Corby admitted that he could not offer any testimony on the merits of the ultimate success of pursuing the appeal of the order vacating the arbitration. (J.A. 1236a:14-19).

Perhaps most importantly, Mr. Corby acknowledged that the alleged failure to perfect the appeal was the initiation of the legal malpractice claim, saying "that's when I would say it would begin." (J.A. 1236:24-1236a:8). Based on this and his voir dire at trial, the District Court prohibited Mr. Corby from testifying at trial as to the merits of the underlying case, including whether a judgment would have been collectible, and on the merits of the appeal of the order vacating the arbitration award. (J.A. 894:21-895:4).

11

## SUMMARY OF ARGUMENT

The District Court erred by denying Mr. Chagaris' Motions for Summary Judgment, Directed Verdict, and Judgment Notwithstanding the Verdict on the claims against him. Any claims against Mr. Chagaris were barred by the Statute of Limitations and the Statute of Repose as evidenced both in the allegations of the various complaints and the evidence offered by K.A. Holdings at trial. Additionally, K.A. Holdings failed to prove the "case within the case" required for a legal malpractice claim, as it did not prove that the claim for conversion against Overland Properties would have been successful or that a judgment against Overland Properties was collectible. Finally, the District Court erred in admitting into evidence documents and information about damages that it acknowledged K.A. Holdings did not disclose as required by Rule 26, and that did not qualify for the Business Records Exception as admitted. Accordingly, the verdict rendered by the jury and the judgment entered by the District Court should be reversed and the claims against Mr. Chagaris dismissed.

## STANDARD OF REVIEW

"The standard of review regarding a directed verdict is whether the evidence is such, without weighing the credibility of the witnesses, that there is only one conclusion that reasonable jurors could have reached." *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir.1987). "[A]n issue can only be submitted to a

jury when it is supported by substantial evidence that shows a probability and not mere possibility of proof." *E. Auto Distribs., Inc. v. Peugeot Motors*, 795 F.2d 329, 335 (4th Cir.1986). The denial of a directed verdict is reviewed *de novo*. *Randall v. Prince George's County*, 302 F.3d 188 (4th Cir. 2002).

The standard of review for granting a renewed motion for judgment as a matter of law is the same as the motion for directed verdict. *Rambus, Inc. v. Infineon Technologies, AG*, 318 F.3d 1081, 1086, *rehearing and rehearing en banc denied, certiorari denied* 124 S.Ct. 227, 540 U.S. 874.

## ARGUMENT

**I.      THE DISTRICT COURT ERRED IN DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, DIRECTED VERDICT, AND JUDGMENT NOTWITHSTANDING THE VERDICT WHEN THE CONDUCT WAS SPECIFICALLY ALLEGED TO HAVE OCCURRED MORE THAN FOUR YEARS BEFORE THE FILING OF THE COMPLAINT.**

The District Court erred in denying Mr. Chagaris' Motions, and allowing the jury to consider the claims against him, as the alleged conduct alleged to give rise to the claims all occurred more than four years before K.A. Holdings' first complaint action was filed, and thus the action was barred by the Statute of Limitations and Statute of Repose.

13

**A.     Claims for Legal Malpractice in North Carolina are governed by a three year Statute of Limitations and a four year Statute of Repose, running from the defendant's last act giving rise to the cause of action.**

N.C. Gen. Stat. § 1-15(c) governs legal malpractice claims, and establishes a three-year statute of limitations and a four-year statute of repose. *Fender v. Deaton*, 153 N.C.App. 187, 189, 571 S.E.2d 1, 2 (2002). The statute provides in pertinent part:

> [A] cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action.... [I]n no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]

N.C. Gen.Stat. § 1-15(c) (2007).

"As enacted, G.S. 1-15(c) provides for a minimum three year period from occurrence of the last act; and an additional one-year-from-discovery period for injuries 'not readily apparent' subject to a four-year period of repose commencing with defendant's last act giving rise to the cause of action…" *Black v. Littlejohn*, 312 N.C. 626, 634, 325 S.E.2d 469, 475 (1985). The additional year provided for in the statute of repose is only available to allow for discovery of claims that are not otherwise known, not to extend the filing time where a plaintiff fails to take action on a known claim. *Id.*

The Statute of Repose <u>begins</u> to run, according to the North Carolina Supreme Court, when the cause of action <u>accrues</u>. Unlike an ordinary statute of

14

limitations, "the period contained in the Statute of Repose <u>begins</u> when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." *Id*. (internal citations omitted) (emphasis added). "Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce." *Id*. (citing *Raferty v. William C. Vick Construction Co.,* 291 N.C. 180, 186, 230 S.E.2d 405, 408 (1976); *Developments in the Law—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1200 (1950); S. Speiser, C. Krause and A. Gans, I *The American Law of Torts* § 5:27 (1983)).

"A statute of repose creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained." *Hargett v. Holland*, 337 N.C. 651, 654, 447 S.E.2d 784, 787 (1994) (citation omitted). "If the action is not brought within the specified period, the plaintiff `literally has no cause of action. The harm that has been done is *damnum absque injuria*-a wrong for which the law affords no redress.'" *Id*. (quoting *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 199, 293 A.2d 662, 667 (1972)). "Regardless of when plaintiff's claim might have accrued, or when plaintiffs might have discovered their injury, because of the four-year statute of repose, their claim is not maintainable unless it was brought within four years of the last act of defendant giving rise to the claim." *Id.* at 655, 788

(citing *Flippin v. Jarrell*, 301 N.C. 108, 112, 270 S.E.2d 482, 485 (1980), *reh'g denied*, 301 N.C. 727, 274 S.E.2d 228 (1981); *Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 328 S.E.2d 274 (1985)).

As the District Court noted, "the relevant date is the last act of the defendant giving rise to the cause of action, not the termination of the attorney-client relationship." Order on Defendant's Motion for Summary Judgment, J.A. 182, 188 (Citing *Ramboot, Inc. v. Lucas*, 181 N.C. App. 729, 733, 640 S.E.2d 845, 847 (2007). "Continued representation after the last act giving rise to the claim does not toll or extend the Statute of Repose." *Carle v. Wyrick, Robbins, Yates, & Ponton, LLP*, 738 S.E.2d 766 (2013). Accordingly, any additional representation after the act giving rise to a claim for legal malpractice does not prolong either the Statute of Limitations or Statute of Repose.

**B.    The period for K.A. Holdings to file its complaint began to run when Mr. Chagaris allegedly failed to timely perfect the appeal and expired before the first complaint was filed.**

K.A. Holdings, or some allegedly affiliated entity, first filed suit against Mr. Chagaris on October 31, 2007. This was more than four years after it was aware that the appeal from the order vacating the arbitration award was not perfected since no transcript was ordered by January 2, 2003, the deadline required under the North Carolina Rules of Appellate Procedure. Thus, the claim was barred by the Statute of Limitations and the Statute of Repose.

16

The factual allegations contained in each of the complaints, and specifically the verified Second Amended Complaint, show clearly that the claims against Mr. Chagaris are barred by the Statute of Limitations and Statute of Repose. K.A. Holdings specifically represented to the court that Mr. Chagaris' conduct occurred more than four years before it filed the Complaint. K.A. Holdings alleged:

- That over a period of "**more than four years,**" the Defendant inflicted economic harm upon Plaintiff by his complete disregard and denial of Plaintiff's rights. (J.A. 83 ¶ 185) (emphasis added).

- The wrongful actions of the Defendant were the proximate cause of Plaintiff's damage and loss, and they would not have been sustained but for the actions of the Defendant over a period of "**more than four (4) years.**" (J.A. 83 at ¶189) (emphasis added).

All of the complaints allege that the conduct had occurred for <u>more than</u> four years. This means, without question, that the alleged conduct occurred more than four years before the complaint was filed, and thus was barred by the Statute of Limitations and Statute of Repose. Likewise, all complaints demand interest from December 2002 in the Prayers for Relief, and specifically alleged that Mr. Chagaris "failed to argue" a specific grounds for not vacating the arbitration award and that his "fraudulent concealment continued from December 2002…" (J.A. 25 at ¶ 69, J.A. 47 at ¶¶ 88, 92, J.A. 57 at ¶¶ 152, 154, and J.A. 68 at ¶¶ 44, 45, and J.A. 80 at ¶ 164). All of this shows that K.A. Holdings has specifically represented to the Court, in three verified complaints, that the alleged claim arose in 2002.

17

K.A. Holdings specifically alleged that Mr. Chagaris' malpractice occurred when he failed to perfect the Notice of Appeal.[1] (J.A. 68 at ¶45). Likewise, K.A. Holdings' expert testified during his deposition that his opinion was that the malpractice commenced with the failure to perfect the appeal. (J.A. 1236:24-1236a:8). Based on the North Carolina Rules of Appellate Procedure and the Notice of Appeal, the transcript had to be ordered by January 2, 2003 to perfect the appeal, and it was not. This gave rise to K.A. Holdings' claim against him on that date and started the clock for the Statute of Limitations and Statute of Repose. Accordingly, K.A. Holdings had to file its Complaint by November or December of 2005, or January 2, 2006 at the latest.

Even giving K.A. Holdings an extra year under the Statute of Repose, to which it was not entitled as it was aware the appeal was not perfected before the Statute of Limitations ran, it had to file its complaint by January 2, 2007. K.A. Holdings did not file its initial complaint until October 31, 2007. This was well beyond either the three- or four-year period for filing under either the Statute of Limitations or Statute of Repose, respectively, and as such, K.A. Holdings' claim was barred.

---

[1] While K.A. Holdings' allegations of malpractice are denied, the facts as presented and argued by it are presented here solely for showing that the claims would have been barred by the Statute of Limitations and Statute of Repose even if they had been valid claims.

18

However, the District Court erred in identifying subsequent acts by Mr. Chagaris arising from the further pursuit of the original claim and allowing the jury to consider those acts. Those subsequent acts were to recover the same damages as the arbitration and were merely extensions of the original attempt to confirm the arbitration award. Any alleged negligence that may have arisen during those actions was at most a by-product of the alleged failure to perfect the appeal of the 2002 order. They do not extend the time for filing the complaints.

Given that North Carolina does not follow the "continued representation" theory for legal malpractice, the subsequent alleged actions did not extend the time for filing the Complaint. Admittedly, Mr. Chagaris continued to work for K.A. Holdings after filing the Notice of Appeal. However, none of that work extended the Statute of Limitations or Statute of Repose. All of it related back to the original representation of K.A. Holdings to pursue recovery from Overland Properties for being locked out of the warehouse. It is, therefore, absolutely clear and without question that K.A. Holdings' claims for legal malpractice were time-barred by the Statute of Limitations and Statute of Repose. As such, summary judgment and directed verdict for Mr. Chagaris should have been granted, and the District Court erred in allowing the jury to consider the claim at trial.

### C.      Equitable Estoppel does not defeat the Statute of Repose

The District Court initially ruled the Statute of Repose was equitably tolled. (J.A. 182). Upon reconsideration, the District Court reversed, and confirmed that the doctrine of equitable estoppel does not toll the Statute of Repose. (Docket #114, Order on Defendant's Oral Motion to Reconsider) ("…Defendant correctly argues that North Carolina law does not recognize any equitable tolling of its statute of repose for legal malpractice claims." (citing *Goodman v. Holmves & McLaurin*, 192 N.C. App. 467, 665 S.E.2d 526 (2008)). As such, equitable estoppel does not serve as a ground for submitting the case to the jury on any of the claims.

## II.      THE DISTRICT COURT ERRED IN ADMITTING EVIDENCE OFFERED BY K.A. HOLDINGS TO SUPPORT ITS CLAIM OF DAMAGES THAT WAS NOT PREVIOUSLY DISCLOSED PURSUANT TO RULE 26.

The District Court erred in admitting the evidence of damages after K.A. Holdings failed to disclose the calculations and supporting documentation as it was required to do by Rule 26.

### A.      Rule 26 requires that parties disclose documents supporting the claim for damages and provide a computation to the opposing party.

Federal Rule of Civil Procedure 26(a)(l)(A)(iii) requires a party to disclose to its opposing party "a computation of each category of damages claimed by the

20

disclosing party—who must also make available...the documents or other evidentiary material...on which each computation is based, including materials bearing on the nature and extent of injuries suffered [...]." *Silicon Knights, Inc. v. Epic Games, Inc.*, 2012 WL 1596722 (quoting Fed. R. Civ. P. 26(a)(l)(A)(iii)). "A party cannot fulfill this requirement by providing 'undifferentiated financial statements; it requires a "computation," supported by documents.'" *Id.* (citing *Design Strategy. Inc. v. Davis,* 469 F.3d 284, 295 (2d Cir. 2006); *Bullard v. Roadway Express,* 3 F. App'x 418,420-21 (6th Cir. 2001) (per curiam) (unpublished); *Frontline Med. Assocs. Inc. v. Coventry Health Care,* 263 F.R.D. 567, 569 (CD. Cal. 2009); and *Shock v. Aerospace Integration Corp.*, 2009 WL 595923, at *4-5 (N.D. Fla. 2009). A party's Rule 26(a)(l)(A)(iii) disclosure must state the types of damages sought, a specific computation of each category, and documents to support the computations. *Id.* (citing *Design Strategy. Inc*. 469 F.3d at 295).

Further, a party has an ongoing duty to supplement its disclosure if it learns it was incomplete or incorrect. *Id*. (citing F.R.Civ.P Rule 26(e)). Evidence not initially disclosed that a party intends to use to support its claims must be provided to the opposing party. *Id. (*referencing *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co*., 175 F.3d l221, 1229 (10th Cir. 1999); *Hertz v. Luzenac Am*., Inc., 2006 WL 994431, at *10 (D. Colo. 2006) (unpublished)). "Disclosing damages-related

21

documents alone, without disclosing a computation based on such documents, does not satisfy a party's Rule 26(a)(l)(A)(iii) obligation." *Silicon Knights* at *4 (citing *Design Strategy. Inc*. 469 F.3d at 295; *Bullard* v. Roadway Express, 3 F. App'x 418, 420-21 (6th Cir. 2001); *Gould Paper Corp. v. Madisen Corp*., 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009)).

Rule 37(c)(1) provides that a party "fails to provide information or identify a witness as required by Rule 26(a) or (e),…is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." A court considers five factors in determining whether the non-disclosure was harmless or substantially justified: (1) surprise to the opposing party; (2) the party's ability to cure the surprise; (3) disruption of the trial; (4) the importance of the evidence; and (5) the explanation for the failure to disclose the evidence. *Id.* (citing *Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721 (E.D. Va. 2001) (quoting *Burlington Ins. Co. v. Shipp*., 215 F.3d 1317, (4th Cir. 2000)).

In *MicroStrategy Inc. v. Bus. Objects, S.A.*, the Federal Circuit, applying Fourth Circuit law, upheld the district court's decision not to allow plaintiff s non-expert damages evidence after the expert evidence was excluded due to being based on "a flawed methodology . . . ." 429 F.3d 1344, 1353 (Fed. Cir. 2005). The plaintiff did not supplement its Rule 26 disclosures, and then attempted to

22

introduce non-expert evidence to prove damages. *Id*. The Federal Circuit upheld the district court's finding that plaintiff had violated Rule 26 by offering evidence that surprised and prejudiced defendant, especially since the proposed evidence had been in plaintiff's custody for a significant period of time. *Id*. at 1357.

### B.    K.A. Holdings failed to disclose any damages computations or supporting documents to Mr. Chagaris prior to trial.

K.A. Holdings failed to specifically provide any computation of the damages element in its Rule 26 disclosures. It also failed to identify with any specificity documents that supported its claim for damages. Instead, it made several unorganized boxes of documents available for inspection days before the deposition of K.A. Holdings' witnesses. The documents were made available only after requested by Mr. Chagaris. To the extent that K.A. Holdings produced documents, it failed to identify the documents contained therein or how they related to the claimed damages. Counsel for K.A. Holdings was questioned on the stand during arguments on Mr. Chagaris' Motion in Limine to exclude evidence on damages. During the questioning, he admitted that K.A. Holdings did not provide a specific document reflecting its calculation of the claimed damages. (J.A. 276:1-23).

The District Court noted that K.A. Holdings had to have a paper of calculations to put the damages in front of the jury, "not four old boxes that

23

nobody has added up." (J.A. 279:3-13). The District Court also noted that the calculation was missing and that Rule 26 had not been complied with. (J.A. 280:1-5, 319:16-17) ("What is not there is a computation…" and "So it's clear that Rule 26 has not specifically been complied with…"). Despite acknowledging that no computation or specific supporting documentation was previously disclosed, the District Court chastised Mr. Chagaris for not seeking assistance from the court to force K.A. Holdings to comply with Rule 26. This improperly shifted the burden of Rule 26 to Mr. Chagaris, when it only imposes a burden on a party seeking damages. By allowing K.A. Holdings to provide a calculation of damages for the first time during trial and introduce evidence of damages that had not been previously disclosed, Mr. Chagaris was not able to properly prepare for the damages evidence K.A. Holdings offered. This is especially true since the arbitration panel only awarded a return of the escrow money, which only totaled $50,000.00.

The District Court made no determination that failure to provide the computation or specify supporting documents was either justified or harmless. Accordingly, it erred in allowing the jury to consider the damages evidence. Without this proof of damages, K.A. Holdings would not have been able to satisfy the elements of its claim. As such, the judgment entered on this evidence should be reversed.

**III.    THE DISTRICT COURT ERRED IN ALLOWING THE JURY TO CONSIDER K.A. HOLDINGS' CLAIM OF LEGAL MALPRACTICE WHEN IT HAD FAILED TO SATISFY THE ELEMENTS FOR SUCH A CLAIM.**

Plaintiff's evidence on its claim for legal malpractice was insufficient to reach the jury, and the District Court erred in allowing the jury to consider the claim of legal malpractice.

**A.    North Carolina provides a specific framework for recovering on a claim for legal malpractice.**

In order to succeed on a claim for legal malpractice, a plaintiff must prove that he would not have suffered the harm alleged absent the negligence of his attorney. *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 157 N.C. App. 60, 66, 577 S.E.2d 918, 923 (2003) (citing *Rorrer v. Cooke*, 313 N.C. 338, 361, 329 S.E.2d 355, 369 (1985)). To establish that the attorney's negligence was the proximate cause of its injuries, the plaintiff must prove: "(1) the underlying claim, upon which the malpractice action is based, was valid; (2) the claim would have resulted in a judgment in the plaintiff's favor; and (3) the judgment would have been collectible or enforceable." *Id.*  This requires the plaintiff to prove "the viability and likelihood of success of the underlying case…even if the negligent actions of the attorney resulted in a total foreclosure of the underlying case being heard on its merits." *Id.* (citing *Kearns v. Horsley*, 144 N.C. App. 200, 211-212, 552 S.E.2d 1, 8-9 (2001)).

25

In *Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis*, the North Carolina Court of Appeals clarified *Rorrer*, *supra*, stating that, "[a]lthough *Rorrer* does not mandate introducing expert testimony in a legal malpractice action, that case does stress the need to establish the standard of care in the same or similar legal community." 356 S.E.2d 372, 86 N.C.App. 51 (N.C. App. 1987). Failure to establish the standard of care prevents a plaintiff from succeeding on its claim. *Id.* ("Without any evidence as to the standard of care, plaintiffs failed to get past the first prong of the *Rorrer* test.").

**B.      K.A. Holdings' claim for legal malpractice should not have even survived summary judgment.**

As an initial matter, the claim for legal malpractice should not have survived summary judgment, as no standard of care was established, there was no evidence offered by K.A. Holdings that an appeal in early 2003 would have ultimately been successful, or that a judgment, for $50,000 at most, would have been collectible. There was no expert affidavit on these matters presented in opposition to the motion for summary judgment. The District Court could no longer rely on the pleadings alone, and the failure to establish these elements should have resulted in summary judgment for Mr. Chagaris.

26

**C.    K.A. Holdings' evidence at trial failed to satisfy the elements for recovering on a claim for legal malpractice.**

      **1.  K.A. Holdings failed to establish that its underlying claim for conversion against Overland Properties was valid or that it could obtain a judgment in its favor.**

In this case, K.A. Holdings' underlying claim was for conversion of the goods stored in the warehouse at the time that it was locked out of it by Overland Properties.  It did not prove this claim at trial.

      **a.    Required elements for a claim of conversion in North Carolina.**

"[C]onversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co., Inc.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008) (citing *Myers v. Catoe Constr. Co.*, 80 N.C.App. 692, 695, 343 S.E.2d 281, 283 (1986)). "Therefore, two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." *Id.* (citing *Lake Mary Ltd. P'ship. v. Johnston*, 145 N.C.App. 525, 532, 551 S.E.2d 546, 552, *rev. denied*, 354 N.C. 363, 557 S.E.2d 539 (2001)). If the plaintiff fails to establish the fair market value of the converted property, the issue of compensatory damages is improperly submitted to the jury. *Mace v. Pyatt*,

203 N.C. App. 245, 691 S.E.2d 81 (2010). "The burden of proving damages is on the party seeking them." *Id*. (quoting *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 547, 356 S.E.2d 578, 586 (1987). "When compensatory damages are susceptible of proof with approximate accuracy and may be measured by some degree of certainty, they must be so proved." *Id*. (quoting *Midgett v. Highway Commission*, 265 N.C. 373, 378, 144 S.E.2d 121, 125 (1965). The North Carolina Court of Appeals discussed the North Carolina Supreme Court's decision in *Lieb v. Mayer* in making the determination in *Mace*, where failure to offer evidence as to the value of the car before the accident precluded recovery of substantial damages. *Id*. (quoting *Lieb v. Mayer*, 244 N.C. 613, 94 S.E.2d 658 (1956). The lack of evidence of the condition of the car before and after the wreck precluded recovery of anything more than nominal damages. *Id*. "The burden is always upon the complaining party to establish by evidence such facts as will furnish a basis for their assessment, according to some definite and legal rule". *Id*. at 616, 94 S.E.2d at 659-60.

### b.    K.A. Holdings' failure to establish the fair market value of the specific goods allegedly converted prevents it from proving the underlying claim.

Here, K.A. Holdings failed to offer any competent evidence as to the "fair market value" of the allegedly converted items. It failed to offer even an accurate physical "inventory" of the items. It only offered two sets of documents that it

claimed showed the items, the purchase price, and quantity purchased. However, these documents were dated 1999 and 2002, raising the question that at least some were from years before the alleged loss, and separated by three years. Further, they did not state the "fair market value" of the goods at any time, and certainly not as of the time of the alleged loss years later. The documents also failed to identify the area of the warehouse in which the identified goods were stored or in any way indicate the allocation of the goods between the accessible and inaccessible portions of the warehouse. As such, it was impossible from the evidence to determine the actual fair market value of the goods *solely* in the allegedly inaccessible area. Theoretically, based on the evidence presented, all of the goods could have been in the 20% of the warehouse that was accessible, and no evidence presented at trial precludes the possibility that a substantial portion, or even all, of the goods were accessible, and therefore there were significantly reduced, and possibly no, damages.

To satisfy its burden of proof of damages for the conversion claim, K.A. Holdings had to establish the fair market value of the *specific* goods that it was unable to access, not just claim that it was unable to access 80% of the square footage of the warehouse.    K.A. Holdings did not offer evidence that the underlying claim was valid or would have been successful, or that damages would have been recoverable for that claim. Thus, it cannot establish that it would even

29

have successfully obtained a judgment against Overland Properties or the amount of such a judgment. This failure precludes any recovery for a claim for legal malpractice against Mr. Chagaris.

### 2. Defenses in the underlying case would have precluded a successful outcome in that action.

Overland Properties had two defenses available to the appeal of the arbitration award. The first was res judicata, by way of the summary ejectment entered on January 18, 2012. "Under the doctrine of *res judicata*, a final judgment on the merits by a court of competent jurisdiction is conclusive as to rights, questions and facts in issue. Such judgment bars all subsequent actions involving the same issues and the same parties or those in privity with them." *Chrisalis Properties, Inc. v. Separate Quarters, Inc.*, 101 N.C. App. 81, 84, 398 S.E.2d 628, 631 (1990) (citing *First Union National Bank v. Richards*, 90 N.C.App. 650, 653, 369 S.E.2d 620, 621 (1988); *Shelton v. Fairley*, 72 N.C.App. 1, 5, 323 S.E.2d 410, 414 (1984), *disc. rev. denied*, 313 N.C. 509, 329 S.E.2d 394 (1985)). It "also applies to those issues which could have been raised in the prior action but were not." *Id.* (citing *Kabatnik v. Westminster Co.*, 63 N.C.App. 708, 712, 306 S.E.2d 513, 515 (1983)). This meant that a court of competent jurisdiction had dispossessed K.A. Holdings of the warehouse and the contents in it. An appeal of the vacating of the arbitration award would not have changed this fact. As such,

K.A. Holdings' appeal would have failed and the claim would not have been valid, a requirement that also defeats its claims of legal malpractice against Mr. Chagaris.

The second defense was accord and satisfaction, evidenced by the letter of March 25, 2002, sent by K.A. Holdings' New York attorney, John Kulisek. (J.A. 1242a). In that, K.A. Holdings agreed that it would vacate the premises at a later date "in lieu of litigating appeal of eviction proceeding." "An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction... something other than or different from what he is, or considered himself entitled to; and a "satisfaction" is the execution or performance, of such agreement." *Smythe v. Waffle House*, 170 N.C. App. 361, 367, 612 S.E.2d 345, 349-50 (2005) (quoting *Zanone v. RJR Nabisco, Inc.*, 120 N.C.App. 768, 772, 463 S.E.2d 584, 587 (1995) (internal citation omitted). By sending this letter, prior to Mr. Chagaris' retention, K.A. Holdings agreed to be bound by the summary ejectment if it were allowed to stay for a period of time longer than the order allowed. By extracting this concession from Hawthorne Mills, K.A. Holdings waived its right to appeal the summary ejectment proceeding. Accordingly, K.A. Holdings had no right to the arbitration, no right to file to confirm the arbitration award, and no grounds on which to appeal the order vacating the arbitration award. As such, its claim against Hawthorne Mills was not viable and, as above, it failed to prove the underlying claim, a requirement for the legal malpractice claim, and it

31

therefore failed to prove its claim against Mr. Chagaris. Accordingly, the District Court erred in denying Mr. Chagaris' Motions for Directed Verdict and Judgment Notwithstanding the Verdict.

### 3. There was no evidence that a judgment would have been collectible.

In *In Re McGillewie*, 936 F.Supp. 327 (W.D.N.C., 1995), affirmed 94 F.3d 641 (4th Cir. 1996), the plaintiff failed to establish that its judgment would have been collectible. In that case, the plaintiff offered no evidence as to the garnishable assets of the underlying defendant. The only evidence offered was a Dunn & Bradstreet Information Report on the successor to the underlying defendant. The court noted that the report "provides little or no support for Plaintiffs' claim since the report is on the alleged successor by corporate merger to Moog GmbH, rather than Moog GmbH itself. Plaintiffs have produced no evidence to support a conclusion that the assets of this entity would have been subject to collection based upon a judgment against Moog." *Id.*

The exact same is true here. K.A. Holdings has not presented any evidence that a judgment would have been collectible from Overland Properties. The only possible source of recovery was the warehouse that K.A. Holdings had just sold to Hawthorne Mills. (J.A. 560:2-561:4). K.A. Holdings offered no evidence of any other assets to satisfy a judgment against Overland Properties. K.A. Holdings

32

argued that the property was owned free and clear and recently purchased for $1.6 million. (J.A. 561:8-11). However, this did not establish collectability for several reasons. First, the warehouse building was immediately transferred to another entity, Hawthorne Mills Partners. (J.A. 1011:9-:1012:13, 1242). Second, the uncontroverted evidence was that the warehouse building was not owned free and clear. At the same time as the second transfer, Hawthorne Mills Partners executed a Deed of Trust in favor of Landover Company, LLC, in the amount of $2.5 million. (J.A. 1011:9-:1012:13, 1242). Not only was Overland Properties no longer in possession of the warehouse building, the new owner encumbered the warehouse building with a Deed of Trust more than 50% greater than what K.A. Holdings had paid for the warehouse and the contents. Even if K.A. Holdings had obtained a judgment against Overland Properties, it would not have attached to this building and would not have been collectible. Therefore, K.A. Holdings offered no evidence to the jury that any judgment in the underlying case was actually collectible.

### 4. K.A. Holdings' expert offered no opinion that the appeal would have been successful or collectible.

K.A. Holdings' expert offered no testimony or opinion as to the validity or likelihood of success on appeal from the order vacating the arbitration award or that any award would have been collectible. This is fitting, given that any such

testimony would have been inappropriately based on hearsay evidence since he did not even review the pleadings or materials from the arbitration confirmation proceedings. Accordingly, all of the evidence before the jury was that the judgment would not have been collectible. As such, K.A. Holdings failed to satisfy another required element for a claim for legal malpractice and judgment entered on it was in error.

**IV.     THE DISTRICT COURT ERRED IN ADMITTING DOCUMENTS INTO EVIDENCE UNDER THE BUSINESS RECORDS EXCEPTION THAT DID NOT SATISFY THE SAFEGUARDS FOR SUCH DOCUMENTS.**

The District Court erred in admitting into evidence, under the Business Records Exception, Exhibits 16 and 17. K.A. Holdings presented these to support its damages claim, but that did not satisfy any of the safeguards required for the Business Records Exception.

**A.     Records must be kept in the course of regularly conducted business activity to qualify for the Business Records Exception.**

Rule 803(6)(B) allows for the introduction of records that are "kept in the course of a regularly conducted activity of a business." For a record to be admitted as a business record, it must be "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with

34

knowledge or from information transmitted by a person with knowledge." *United States v. Cone*, 714 F.3d 197, 219 (4th Cir. 2013) (quoting *Clark v. City of L.A.*, 650 F.2d 1033, 1036–37 (9th Cir.1981) (quoting Fed. R. Evid. 803(6))).  Setting aside a judgment based on improper admission of evidence is appropriate where "'justice so requires or a party's substantial rights are affected.'" *Barber v. JTEKT Auto. Virginia, Inc.*, 513 F. App'x 346, 348 (4th Cir. 2013) (quoting *Creekmore v. Maryview Hosp.,* 662 F.3d 686, 693 (4th Cir.2011) (citing Fed.R.Civ.P. 61).

**B.    The District Court erred in admitted the documents under the Business Records Exception as K.A. Holdings failed to satisfy any of the criteria for the exception.**

In this case, the District Court admitted into evidence, over Mr. Chagaris' objection, Exhibit 16 and 17, records that K.A. Holdings argued showed the "contents" of the warehouse that were allegedly lost as a result of Mr. Chagaris' conduct. These appear to be sales records of some type that show a limited description of items, a quantity, and a purchase price. They are dated 1999 and 2002, showing at least some of the alleged goods were purchased at least three years before the contents were allegedly converted. There was no other information contained in these two sets of documents. The documents do not reflect the price as wholesale, retail, fair market value, or any other specific value. Some have "dummy" in the header of the documents. These documents failed to satisfy any of the requirements for admissibility under the Business Records

Exception to the hearsay rule. As these documents were K.A. Holdings' *only* evidence on which to base the calculation of damages, without these documents, it could not have met the elements of its claim and no judgment would have been possible.

### 1. The records were not made by a regular business activity.

First, there was no evidence that the documents were made by a regularly conducted business activity. In fact, the documents only contain dates from both 1999 and 2002. This alone shows that they were not maintained by a regularly conducted business activity. The only two dates are three years apart. Further, Mr. Diven admitted that the documents were generated solely for the arbitration proceedings, not a regular business activity. (J.A. 405:16-406:8). There was no evidence of an actual "inventory," physically counting the contents at any specific time to determine the actual presence of the goods or the type and quantity. It is hard to imagine any business that sells goods, especially seasonally dependent goods such as Christmas items, that does not maintain an accurate inventory. The sets of documents did not even indicate where within the warehouse the goods were kept so as to determine which, if any, of the goods were inaccessible. To the extent these were the *only* documents available, they were clearly not made by a regular business activity and thus fail to satisfy the first requirement for the Business Records Exception.

36

### 2.  The records were not kept in the regular course of business of K.A. Holdings or any other business.

The undisputed evidence is that the documents were not kept in the regular course of *any* business, and certainly not K.A. Holdings. There is no evidence that the documents were kept in the course of K.A. Holdings' business. Mr. Adler admitted that the documents were generated from an inherited and "gerrymandered" computer that was in the building at the time of purchase. Therefore, any records from it or files on it were not generated or kept by K.A. Holdings. Further, there is no evidence that anyone kept these records in its regular course of business or even who originally generated or kept them.  In fact, given the two dates, three years apart, the opposite appears to be true. K.A. Holdings even admitted that the computer had to be "gerrymandered" to produce the documents, removing any doubt that the offered documents were not kept in the regular course of a business.

### 3.  The documents were not made as a regular practice.

Similarly, there is no evidence that Hanfords Creations had the regular practice to make the documents. As above, there was no evidence that K.A. Holdings even made or kept any actual inventory. Accordingly, it could not have been K.A. Holdings' regular practice to do so. Further, K.A. Holdings offered no testimony from anyone with Hanfords Creations that this gerrymandered list was

even made in the regular operation of that company's business. There is no evidence that the offered documents were from any regular business activity. In fact, Mr. Adler testified that the documents were generated specifically for the arbitration, by "gerrymandering" the computer, showing they were not kept or generated as part of a regular business practice. (J.A. 769:16-19).

### 4. These documents were not generated by a person with knowledge of their contents or from a person with knowledge of the contents.

Finally, there was no evidence that the documents were generated by a person with knowledge of the contents. As above, Mr. Adler testified the computer was "inherited" and that Ms. Rios gerrymandered it to generate the documents. Ms. Rios did not testify at trial. There was no evidence presented in this case that any witness had actual knowledge of the information contained in those documents, how it was originally generated or kept, what specific quantity, if any, of the goods were actually located in the warehouse at the time in question or if they were in an inaccessible portion of the warehouse. There was also no evidence what the numbers meant, such as wholesale, retail, seasonal price or some other value.

K.A. Holdings failed to satisfy any of the legally required thresholds to warrant admission of the documents as evidence. As such, the District Court erred in admitting the documents, Exhibits 16 and 17, into evidence. Given that these documents were K.A. Holdings' *only* source of evidence for the damages

calculations, the admission was not harmless and swayed the jury's determination on damages. Accordingly, the District Court's decision should be reversed and the judgment overturned.

## CONCLUSION

For the foregoing reasons, Mr. Chagaris prays unto the Court for an Order reversing the District Court's denial of his Motions for Summary Judgment, Directed Verdict, and Judgment Notwithstanding the Verdict as to all of K.A. Holdings' claims.

This 12th day of February, 2014.

/s/ Rodney Dean
Rodney Dean (NC Bar No. 5573)
Dean, Gibson Hofer & Nance, PLLC
301 S. McDowell Street, Suite 900
Charlotte, NC  28204-2686
Ph:    (704) 372-2700
Fx:    (704) 372-1804
rdean@deanandgibson.com
*Attorney for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,775 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in font size 14 and Times New Roman.

This 12th day of February, 2014.

/s/ Rodney Dean_____
Rodney Dean
N.C. Bar No. 5573
Clay A. Campbell
N.C. Bar No. 38069
DEAN GIBSON HOFER & NANCE, PLLC
301 S. McDowell Street, Suite 900
Charlotte, NC  28204
Ph:    704-372-2700
Fx:    704-372-1804
rdean@dghnlaw.com
ccampbell@dghnlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Rodney Dean, do hereby certify that on February 12, 2014, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the address listed below:

David G. Redding
Joseph R. Pellington
Attorney at Law
201 S. Tryon Street, Suite 915
Charlotte, NC  28202
dredding@tisonreddinglaw.com
jpellington@tisonreddinglaw.com
*Attorneys for Plaintiff-Appellee*

/s/ Rodney Dean_____                  __February 12, 2014___

41